FILED

AUG 02 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   ID-11-1304-MkHJu |
| | ) | |
| STEVEN A. STEPHENS, | ) | Bk. No.   10-41450-JDP |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| STEVEN A. STEPHENS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| R. SAM HOPKINS, Chapter 7 | ) | |
| Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on June 14, 2012
at Boise, Idaho

Filed – August 2, 2012

Appeal From The United States Bankruptcy Court
for the District of Idaho

Honorable Jim D. Pappas, Bankruptcy Judge, Presiding

Appearances:    Dustin W. Manwaring of the Milestone Law Firm
argued on behalf of Appellant Steven A. Stephens;
Brett Cahoon of Racine, Olson, Nye, Budge &
Bailey, Chartered, argued on behalf of Appellee R.
Sam Hopkins, Chapter 7 trustee.

Before:   MARKELL, HOLLOWELL and JURY, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Debtor Steven A. Stephens ("Stephens") claimed a homestead exemption under Idaho law in real property he owned in Alaska. R. Sam Hopkins, his chapter 7[1] trustee ("Trustee"), objected to Stephens' homestead exemption claim. The bankruptcy court sustained the Trustee's objection, and Stephens appealed. We AFFIRM.

**FACTS**[2]

When Stephens, an Idaho native, filed his bankruptcy case, he owned two parcels of real property. One was in Idaho Falls, Bonneville County, Idaho ("Idaho Property") and the other was in Kenai Peninsula Borough, Sterling, Alaska ("Alaska Property").

Stephens purchased the Alaska Property in 2006. At the time he purchased the Alaska Property, it was vacant land. However, over the course of several years, he worked on building a home on the property with the intent to eventually reside there permanently. Between 2007 and 2010, Stephens periodically would travel to Alaska, for several days or weeks at a time, to work on the construction of his Alaska home. While he made his permanent move to the Alaska Property in December 2010, Stephens never actually completed the home's construction. The Alaska home still lacks running water, a sewage system, cabinetry, carpeting

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. All Civil Rule references are to the Federal Rules of Civil Procedure.

[2] The parties stipulated to all of the relevant facts.

2

and flooring.[3]

Stephens commenced his chapter 7 bankruptcy case in the United States Bankruptcy Court for the District of Idaho in August 2010, before his move to Alaska. Stephens had generally been planning to relocate to Alaska as early as 2006 and had been making firm plans to relocate there since early 2010. These firm plans included obtaining professional licensing from the State of Alaska to practice as a psychologist and seeking employment in Alaska as a psychologist.[4]

In his bankruptcy schedules, Stephens listed both his Idaho Property and his Alaska Property as assets. The bankruptcy schedules indicated that the Idaho property was worth $130,000 but also was fully encumbered. As set forth in the schedules, the Alaska Property was worth $54,000, with no encumberances. Accordingly, citing Idaho Code § 55-1003,[5] Stephens' Schedule C claimed the full value of the Alaska Property as exempt.

The Trustee timely objected to Stephens' homestead exemption

---

[3]While the stipulated facts do not specify why Stephens halted work on the home, we assume that he lacked sufficient funds to continue the work, or that he wanted to make sure that he prevailed in his exemption claim dispute with the Trustee before continuing the work, or both.

[4]The parties do not dispute that Stephens was a domiciliary of Idaho for bankruptcy venue purposes under 28 U.S.C. § 1408 and for choice of law purposes under § 522(b)(3).

[5]Idaho Code § 55-1003 provides:

A homestead exemption amount shall not exceed the lesser of (i) the total net value of the lands, mobile home, and improvements as described in section 55-1001, Idaho Code; or (ii) the sum of one hundred thousand dollars ($100,000).

3

claim, arguing that Idaho's homestead exemption law, Idaho Code §§ 55-1001, et seq., did not cover real property located outside the State of Idaho. After the parties briefed the issue and submitted their stipulated facts, the bankruptcy court decided the matter without a hearing. In a memorandum decision, the bankruptcy court relied on its own prior decisions in concluding as a matter of law that Idaho's homestead exemption law does not apply to out-of-state real property.[6]

The bankruptcy court entered its order sustaining the Trustee's objection on May 10, 2011, and Stephens timely appealed on May 27, 2011.[7]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Does Idaho's homestead exemption law cover real property located outside the State of Idaho?

---

[6]The bankruptcy court's prior decisions are: In re Capps, 438 B.R. 668 (Bankr. D. Idaho 2010); In re Harris, 2010 WL 2595294 (Bankr. D. Idaho 2010); In re Kline, 350 B.R. 497 (Bankr. D. Idaho 2005); In re Halpin,1994 WL 594199 (Bankr. D. Idaho 1994). In In re Kline, the bankruptcy court ruled, among other things, that: (1) Utah law explicitly did not permit debtors to claim a homestead in Idaho property, and (2) either Idaho or Utah law would permit the debtors to claim a homestead in their mobile home. 350 B.R. at 502, 504 nn. 6 & 9. We express no opinion on the extraterritoriality of either Idaho's or Utah's exemptions laws as they apply to mobile homes.

[7]Pursuant to Rule 8002(c), the bankruptcy court entered an order on July 28, 2011, granting Stephens an extension of time to file his notice of appeal through May 27, 2011.

4

## STANDARDS OF REVIEW

Questions of statutory interpretation, including the interpretation of exemption laws, are questions of law we review de novo. See Mullen v. Hamlin (In re Hamlin), 465 B.R. 863, 869 (9th Cir. BAP 2012). "Under de novo review, 'we consider a matter anew, as if it had not been heard before, and as if no decision had been previously rendered.'" Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC), 465 B.R. 525, 536 (9th Cir. BAP 2012) (quoting See B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 229 (9th Cir. BAP 2008)).

## DISCUSSION

The commencement of Stephens' bankruptcy case created a bankruptcy estate consisting of all of Stephens' legal or equitable interests in property. § 541(a)(1); Schwab v. Reilly, _ U.S. ___, 130 S.Ct. 2652, 2657 (2010). However, a debtor may claim certain property as exempt from the bankruptcy estate. § 522(b)(1). While the Bankruptcy Code provides its own schedule of exemptions, § 522(d), each state is permitted to decide whether its wants to "opt out" of the federal schedule of bankruptcy exemptions. § 522(b)(2). Idaho explicitly has opted out, Idaho Code § 11-609, so the only exemptions available to Idaho residents are those provided by Idaho law, or by non-bankruptcy federal law. § 522(b)(3).[8]

---

[8]Both parties conceded in the bankruptcy court and in their opening appeal briefs that Stephens was domiciled in Idaho within the meaning of § 523(b)(3)(A) and hence Idaho exemption law must be applied. Notwithstanding his earlier concessions, Stephens attempted to back away from these concessions in his reply brief
(continued...)

5

The focus of this appeal is Idaho's homestead exemption law, Idaho Code §§ 55-1001, et seq. In particular, Stephens contends that he was entitled to exempt his interest in the Alaska Property under Idaho's homestead exemption law.[9] Unfortunately for Stephens, Idaho's homestead exemption law does not explicitly state that the law applies to out-of-state real property. Nor does it state that it does not apply to out-of-state real property. The statute simply doesn't mention or contemplate extraterritorial effect.

Stephens argues that we should construe this silence as meaning that there is no bar to applying Idaho's homestead exemption law to out-of-state real property. He claims that the "plain meaning" of the statutory lacuna is that there is no bar to giving the statute extraterritorial effect. In short, he contends that the Idaho legislature's silence should be interpreted as intent to extend the coverage of Idaho's homestead exemption law beyond the state's geographical boundaries.

---

[8](...continued)
on appeal. All of the arguments Stephens attempted to make for the first time in his reply brief are deemed waived. See Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002); Branam v. Crowder (In re Branam), 226 B.R. 45, 55 (9th Cir. BAP 1998), aff'd, 205 F.3d 1350 (table) (9th Cir. 1999).

[9]Specifically, Idaho Code § 55-1008 exempts from attachment, execution or forced sale qualifying homesteads (as defined in Idaho Code § 55-1001), and the proceeds of qualifying homesteads, up to the maximum amount specified in Idaho Code § 55-1003. The parties do not dispute that the value of the Alaska Property does not exceed the maximum exemption amount permitted under Idaho Code § 55-1003 (the lesser of $100,000 or the value of the homestead).

6

Alternately, he claims that this Panel should construe Idaho's homestead exemption law liberally, in the same manner as the Ninth Circuit construed California's homestead exemption law in Arrol v. Broach (In re Arrol), 170 F.3d 934, 936-37 (9th Cir. 1999).  According to Stephens, if we employ the same type of liberal construction as the Ninth Circuit employed in Arrol, we necessarily will conclude that Idaho's homestead exemption law covers real property located outside the State of Idaho.[10]

As a threshold matter we note that, whenever this Panel is called upon to interpret state law, it is bound by the decisions of that state's supreme court.  Kekauoha-Alisa v. Ameriquest Mortg. Co. (In re Kekauoha-Alisa), 674 F.3d 1083, 1087 (9th Cir. 2012) (citing Sec. Pac. Nat'l Bank v. Kirkland (In re Kirkland), 915 F.2d 1236, 1238 (9th Cir. 1990)).  And when there is no controlling state court decision, we must do our best to predict how the state supreme court would decide the issue.  In re Kekauoha-Alisa, 674 F.3d at 1087-88.

To the best of our knowledge, no Idaho appellate court has addressed the issue of whether Idaho's homestead exemption law applies to real property located outside of Idaho.  Thus, Stephens in essence urges this Panel to predict that, if the Idaho Supreme Court were to consider this issue, it would conclude that Idaho's homestead exemption law applies to out-of-state property.

---

[10]For an overview of how other jurisdictions have dealt with the issue of the extraterritoriality of their homestead exemption laws, see In re Capps, 438 B.R. 668, 671-72 (Bankr. D. Idaho 2010).

7

But we cannot make the prediction Stephens desires. To the contrary, based on our reading of Idaho Supreme Court precedent, we predict that the Idaho Supreme Court would limit the applicability of Idaho's homestead exemption law to real property located within Idaho. In making this prediction, we particularly rely upon a line of Idaho Supreme Court cases holding that, "[i]n the absence of any extraterritorial phraseology contained in the [statute in question], it cannot be construed to have an extraterritorial effect, on the theory that the legislature so intended." Ore-Ida Potato Prods., Inc., v. United Pac. Ins. Co., 87 Idaho 185, 194, 392 P.2d 191, 1996 (1964) (concluding that bond issued under Idaho law to a farm produce dealer did not cover a sales transaction consummated entirely outside the state). Accord, Phillips v. Consol. Supply Co., 126 Idaho 973, 976, 895 P.2d 574, 577 (1995) (concluding that Idaho magistrate had no authority under Idaho Vital Statistics Act to order amendment of Missouri birth certificate); Walbridge v. Robinson, 22 Idaho 236, 125 P. 812, (1912) (concluding that Idaho statutory water permit did not confer right to divert water from Idaho stream for irrigation use in Montana).

We also rely on Idaho Supreme Court decisions acknowledging that exemption statutes must be interpreted liberally, but nonetheless declining to extend the exemption statutes beyond what they reasonably could be construed to cover. See, e.g., Young v. Wright, 77 Idaho 244, 246, 290 P.2d 1086, 1087 (1955);[11]

_____

[11]As Young put it, "'[w]hile the [exemption] statute should be liberally construed, it has been held that construction should
(continued...)

8

_Wright v. Westheimer_, 2 Idaho 962, 28 P. 430, 433 (1891).

_Westheimer_ is particularly instructive. At the time _Westheimer_ was decided, Idaho's homestead exemption law required the filing of a homestead declaration as a prerequisite to the effectiveness of any homestead exemption. _Westheimer_, 2 Idaho 962, 28 P. at 432-33. The appellant in _Westheimer_ argued that the Idaho Supreme Court nonetheless should liberally construe Idaho homestead exemption law to cover the proceeds from the sale of his prior homestead, which he had reinvested in his new residence, even though he did not file the requisite homestead declaration covering his new residence until after the creditor had levied his first writ of attachment against the appellant's new residence. _Id._ at 432.

In rejecting appellant's argument, _Westheimer_ particularly noted that Idaho's homestead exemption law "contain[s] no provisions for an exchange of one homestead for another, nor the purchase of another with the proceeds of the sale of the one exempt, nor for the exemption of the new homestead so purchased." _Id._ at 433. In other words, as _Westheimer_ put it, "[o]ur statutes are silent upon the question under consideration." _Id._ Notwithstanding its acknowledgment that the homestead exemption law had to be liberally construed, and its recognition that the

[11](...continued)
not be indulged in to the extent of conferring privileges and benefits by construction which were not intended to be conferred by the Legislature, or to the extent of doing violence to the terms of the statute.'" _Young_, 77 Idaho at 246, 290 P.2d at 1087 (quoting _Conlin v. Traeger_, 84 Cal.App. 730, 734-35, 258 P. 433, 434 (1927)).

9

law furthered the humane and reasonable purpose of providing "the unfortunate debtor a place of refuge and a gleam of hope," Westheimer refused to expand the homestead exemption law beyond its explicit scope:

> . . . we can hardly conceive the necessity or propriety of strictly construing a statute of mercy or benevolence.  But, as our statutes are silent upon the question under consideration, this court will not undertake to supply omissions made by the law-making power.  This court must distinguish between enacting laws and construing them. . . .  We are of the opinion that an amendment of our homestead laws, exempting the proceeds from a voluntary sale for a reasonable time, would be in the interest of humanity.  For, however much such an amendment may be desired, this court will not assume the power to amend the statutes, and thus usurp the legislative functions of a co-ordinate branch of our state government.

Id. (Emphasis Added.)

Whatever benefit Stephens may be entitled to as a result of the liberal construction of Idaho's homestead exemption law, the Idaho Supreme Court has indicated that this benefit does not permit courts to engage in "judicial legislation" to fill in gaps in the protections afforded to debtors under Idaho's exemption laws. See id.; see also Young, 77 Idaho at 246, 290 P.2d at 1087.

In sum, in light of the Idaho Supreme Court's presumption against implied extraterritoriality of its statutes, and its refusal to judicially expand exemption entitlements beyond the explicit terms of the exemption statutes, we feel compelled to construe Idaho's homestead exemption law as not applying to real property located outside the State of Idaho.

Nothing in In re Arrol, 170 F.3d 934, requires us to hold otherwise.  After reviewing California's homestead exemption law, its legislative history, and the decisions of California's

10

appellate courts interpreting the law, In re Arrol held that it found "nothing" that would justify limiting the scope of California's homestead exemption law to real property located in California. Id. at 937. In contrast, as set forth above, we have found plenty of support in Idaho law for our holding that Idaho's homestead exemption law does not apply to out-of-state real property. In short, the divergent results reached here and in In re Arrol can be attributed to the distinctive bodies of state law that control each decision.[12]

Stephens has made a handful of other legal and policy arguments in support of his assertion that Idaho's homestead exemption law applies to out-of-state real property. However, in light of the above-cited Idaho Supreme Court precedent, none of Stephens' other arguments persuade us that the Idaho Supreme Court would give Idaho's homestead exemption law extraterritorial effect.

## CONCLUSION

While we do not doubt that our views are a correct reading of the statutes involved, we acknowledge that the result in this case could be viewed as harsh and serendipitous. But it is not our role to attempt to "fix" either federal or state exemption law by strained or unsupportable interpretations. Either Congress or the state legislators, not the courts, must act if they don't like how the laws they enacted actually work. See

---

[12]While In re Arrol did not explicitly reference its duty to follow or predict how the California Supreme Court would decide the issue, see In re Kekauoha-Alisa, 674 F.3d at 1087-88, In re Arrol's adherence to that duty is implicit in the manner of its analysis.

11

<u>Lamie v. U.S. Trustee</u>, 540 U.S. 526, 542 (2004); <u>Young</u>, 77 Idaho at 246, 290 P.2d at 1087.

For the reasons set forth above, we AFFIRM the bankruptcy court's order sustaining the Trustee's objection to Stephens' homestead exemption claim.